**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO.:**

LIVING COLOR ENTERPRISES, INC., a
Florida corporation,

    Plaintiff,

vs.

NEW ERA AQUACULTURE, LTD., a
United Kingdom Private limited company;
AQUA-TECH CO., an Illinois corporation;
JOHN T. O'ROURKE, an individual; and
DANIEL LEYDEN, an individual,

    Defendants.

_____/

**COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**
**AND DEMAND FOR JURY TRIAL**

    Plaintiff, Living Color Enterprises, Inc. ("Living Color"), by and through its undersigned counsel, hereby sues Defendants, New Era Aquaculture, Ltd. ("New Era"), Aqua-Tech Co. ("Aqua-Tech"), John T. O'Rourke ("JT"), and Daniel Leyden ("Leyden") (collectively, "Defendants") and alleges:

**PARTIES AND JURISDICTION**

    1.    This is an action for: (a) trademark infringement; (b) unfair competition arising under 15 U.S.C. § 1125(a); (c) unfair competition arising under the common law of the State of Florida; (d) breach of a non-compete agreement; (e) breaches of fiduciary duties and aiding and abetting same; (f) tortious interference with advantageous business relationships; and (g) misappropriation of trade secrets.

2. Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331 and 1338 because Plaintiff's claims for violations of the Lanham Act, Title 15 of the United States Code, arise under federal law. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case and controversy.

3. Defendants are subject to the personal jurisdiction of this Court pursuant to § 48.193(1)(a), Fla. Stat., because Defendants have conducted, engaged in and carried out a business venture within the State of Florida; pursuant to § 48.193(1)(b), Fla. Stat., because Defendants have committed tortious acts within the State of Florida; and pursuant to § 48.193(2), Fla. Stat. because Defendants are engaged in substantial and not isolated business activities within the State of Florida.

4. Venue is proper in this District.

5. Living Color is a Florida corporation with its principal place of business in Broward County, Florida.

6. New Era is a British Private Limited Company and is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, unfair competition, and tortious acts in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Living Color's claims.

7. Aqua-Tech is an Illinois corporation and is subject to the general and specific jurisdiction of this Court by virtue of its continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial

District, and by committing acts of trademark infringement, unfair competition, and tortious acts in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Living Color's claims.

8. Upon information and belief, JT is an individual residing in Broward County, Florida and is otherwise *sui juris*.

9. Upon information and belief, Leyden is an individual residing in the State of Connecticut and is subject to the general and specific jurisdiction of this Court by virtue of his continuous, systematic, and substantial presence within this Judicial District including by offering for sale and selling infringing products in this Judicial District, and by committing acts of trademark infringement, unfair competition, and tortious acts in this Judicial District, which acts form a substantial part of the transactions, occurrences, events and omissions giving rise to Living Color's claims.

## GENERAL ALLEGATIONS

10. New Era is a premium marine foods manufacturer which developed a unique process for manufacturing high-quality and nutritious marine animal food.

11. Prior to 2009, New Era had no avenue for marketing and/or distributing its products in the lucrative North American market.

12. On or about August 10, 2009, Living Color and New Era entered into a business relationship in which Living Color became the exclusive distributor for New Era products in the United States (the "Business Relationship").

13. Along with entering into the Business Relationship, New Era relinquished ownership of the trademark rights for New Era (the "Mark") in the United States to Living Color.

14. From 2009 through 2014, Living Color continuously used the Mark in interstate commerce in association with marine animal food without objection by New Era.

15. From the inception of the Business Relationship until its termination, Living Color invested significant resources into the development of the New Era brand and product including, without limitation:

    a. Coordinating regulatory approvals for the importation of New Era foods into the United States;

    b. Developing FDA-compliant product labeling;

    c. Building a secure, temperature-controlled facility for storage of inventory;

    d. Developing a business plan, sales team, customer list, and marketing strategy;

    e. Marketing the New Era products at trade shows, to public aquariums, and to retail buyers; and

    f. Investing considerable financial resources to facilitate the foregoing.

16. As a result of Living Color's investments with respect to the Business Relationship, New Era developed significant goodwill in the United States. New Era's product and the Mark developed a reputation for quality within the industry and the Mark became an established, high-tier brand of marine animal food.

17. On or about January 10, 2011, Living Color hired JT to be its Sales Manager and lead operations with respect to the Business Relationship.

18. As a condition of his employment, JT executed a Living Color Employee Non-Disclosure Agreement (the "Non-Compete"), a true and correct copy of which is attached hereto as **Exhibit "A"**.

19. Pursuant to the Non-Compete, JT agreed to maintain the confidentiality of Living Color's trade secrets and other confidential information

20. Pursuant to the Non-Compete, JT agreed not to solicit or entice Living Color's employees or independent contractors to terminate their relationships with Living Color.

21. Pursuant to the Non-Compete, JT agreed not to encourage or entice Living Color's vendors or suppliers to cease doing business with Living Color.

22. Pursuant to the Non-Compete, JT agreed not to compete with Living Color following the termination of his employment with Living Color.

23. On or about April 2013, Living Color hired Leyden to be its East Coast Regional Sales Representative.

24. JT and Leyden further developed New Era's brand and products on behalf of Living Color pursuant to the Business Relationship as Living Color's primary and secondary, respectively, contacts for Living Color's customers and New Era.

25. Although it was unaware of such at the time, it has come to light that Defendants worked in concert and met with each other as early May 2014 to develop a scheme to unlawfully terminate Living Color's relationships with New Era, JT, and Leyden.

26. On May 10, 2014, Aqua-Tech, New Era, and JT (at his personal email address) exchanged emails outlining a plot to divest Living Color of the Business Relationship, Living Color's relationships with JT and Leyden, and Living Color's customers and other trade secrets. Essentially, Defendants determined to completely misappropriate the business that Living Color had spent five years developing, leaving it with nothing—not even its key employees. A true and correct copy of the May 10, 2014 email is attached hereto as **Exhibit "B"**.

5

27. On September 5, 2014, New Era terminated the Business Relationship. A true and correct copy of the September 5, 2014 termination email is attached hereto as **Exhibit "C"**.

28. On September 5, 2014, JT terminated his employment with Living Color, stating that he had accepted employment with New Era. A true and correct copy of JT's resignation letter is attached hereto as **Exhibit "D"**.

29. On September 10, 2014, Leyden terminated his employment with Living Color, stating that he had accepted employment with New Era. A true and correct copy of Leyden's resignation letter is attached hereto as **Exhibit "E"**.

30. Subsequent to the termination of Living Color's relationships with New Era, JT, and Leyden, Aqua-Tech became the new exclusive distributor for New Era's products bearing the Mark owned by Living Color.

31. Living Color has complied with all conditions precedent to bringing these claims, or such conditions have been waived, excused or prevented.

32. Living Color has retained the law firm of Roetzel & Andress, LPA to represent it in this action, and is obligated to pay that firm a fee for its services.

### COUNT I – DECLARATORY JUDGMENT (against New Era)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

33. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201.

34. Based on the facts alleged, there is a substantial continuing controversy between Plaintiffs and Defendants.

35. New Era has asserted ownership of the Mark in derogation of Living Color's rights as the rightful owner of the Mark.

36. Living Color is the rightful owner of the Mark and did not and has not authorized the assignment, sale, encumbrance, transfer or other use of the Mark by Defendants.

37. New Era has indicated it has no intention of resolving the dispute with Living Color and the continuation of the dispute may be reasonably inferred.

38. The continuing controversy is real and immediate and creates a definite threat of current and future injury given that Living Color has been deprived of the opportunity to conduct its business due to the usurpation of the business and Mark by New Era and the confusion caused by the dispute in ownership of the Mark.

WHEREFORE, Living Color requests entry of a declaratory judgment in its favor and against New Era, finding, along with such other and further relief as the Court may deem just, proper, and equitable under the circumstances, that Living Color is the rightful owner of the Mark.

## COUNT II – TRADEMARK INFRINGEMENT (against all Defendants)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

39. Living Color has used, promoted, and advertised the Mark continuously since 2009, and has acquired substantial common law rights in the trademark. Additionally, in 2009, New Era relinquished ownership of the trademark rights for the Mark in the United States to Living Color.

40. Defendants are using the identical Mark to sell related and competitive products to other distributors or directly to end users in the same trade area in which Living Color has already established its trademark.

41. Defendants' use of an identical name and mark in association with the same types of products is likely to cause confusion or deceive purchasers as to the source of Living Color's

7

products, and constitutes trademark infringement, false designation of original, false representation and false description in violation of 15 U.S.C. § 1125(a).

42. Defendants have thereby caused, are causing, and will continue to case Living Color serious and irreparable damage for which there is no adequate remedy at law and Defendants' acts will, unless enjoined by this Court, continue to damage Living Color.

43. Defendants' infringement is willful and entitles Living Color to recover damages sustained as a result of Defendants' unlawful conduct, including Defendants' profits, Living Color's damages, trebled, costs, and attorneys' fees pursuant to 15 U.S.C. § 1117.

WHEREFORE, Living Color demands judgment against Defendants for damages, interest, attorney's fees, costs, and such further relief as the Court deems appropriate and just.

**COUNT III – FEDERAL UNFAIR COMPETITION (against all Defendants)**

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

44. Living Color has used, promoted, and advertised the Mark continuously since 2009, and has acquired substantial common law rights in the trademark. Additionally, in 2009, New Era relinquished ownership of the trademark rights for the Mark in the United States to Living Color.

45. Defendants are using the identical Mark to sell related and competitive products to other distributors or directors or directly to end users in the same trade area in which Living Color has already established its trademark.

46. Defendants have falsely designated the origin, quality and nature of their goods and business and have falsely described and represented same, causing likelihood of confusion and constituting unfair competition in violation of 15 U.S.C. § 1125(a).

47. Defendants have thereby caused, are causing, and will continue to cause Living Color serious and irreparable damage for which there is no adequate remedy at law, and Defendants' acts will, unless enjoined by this Court, continue to damage Living Color.

WHEREFORE, Living Color demands judgment against Defendants for damages, interest, attorneys' fees, costs, and such further relief as the Court deems appropriate and just.

### COUNT IV – COMMON LAW UNFAIR COMPETITION (against all Defendants)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

48. The foregoing conduct of Defendants resulting in the misappropriation of Living Color's entire business constitutes an unfair method of competition.

49. As a consequence of the foregoing, Living Color has suffered and will continue to suffer irreparable harm and loss.

50. Upon information and belief, Defendants' violations of Florida unfair competition common law has been willful and deliberate.

WHEREFORE, Living Color demands judgment against Defendants for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT V – BREACH OF NON-COMPETE AGREEMENT (against JT)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

51. JT has breached the Non-Compete by failing to maintain the confidentiality of Living Color's trade secrets and other confidential information and disclosing same to Aqua-Tech.

52. JT has breached the Non-Compete by soliciting or enticing New Era and Leyden to terminate their relationships with Living Color.

53. JT has breached the Non-Compete by engaging in competition with Living Color following the termination of his employment with Living Color.

54. A temporary and permanent injunction against JT for his continued breach of the Non-Compete is reasonably necessary to protect Living Color's legitimate business interests.  If JT is not immediately enjoined from his employment with Aqua-Tech and/or New Era in breach of his Non-Compete, Living Color will suffer irreparable harm.  Such harm includes, but is not limited to, JT's use of Living Color's trade secrets, and other valuable confidential and proprietary product, customer, sales and other business information he obtained in the course of his employment with Living Color, to the detriment of Living Color's business, and customer relationships and goodwill.

WHEREFORE, Living Color demands: (1) temporary and permanent injunctive relief restraining JT from employment with Aqua-Tech and New Era, and otherwise directly and indirectly competing with Living Color's current or proposed business or operations; (2) compensatory damages and disgorgement of profits resulting from JT's breach of the Non-Compete; (3) entry of an order directing JT to pay Living Color's reasonable attorneys' fees and costs pursuant to Fla. Stat. Ch. 542.335(1)(k); (4) an award of attorneys' fees and costs pursuant to the Non-Compete; and (5) such other relief as this Court deems just and appropriate.

## COUNT VI - BREACH OF FIDUCIARY DUTY (against JT)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

10

55. From on or about January 10, 2011 through September 5, 2014, JT was employed by Living Color as its Sales Manager. In that position, JT was responsible for the direct management of Living Color's entire U.S. sales force, and served as Living Color's primary agent with Living Color's customers and New Era. By virtue of his position with Living Color, JT owed Living Color a fiduciary duty of loyalty, and an overall duty to act in Living Color's best interests.

56. JT willfully and knowingly breached his fiduciary duty to Living Color, and consciously disregarded its best interests, by: (1) while still employed by Living Color, coordinating the termination and misappropriation of the Business Relationship; (2) while still employed by Living Color, coordinating the selection of a successor exclusive distributor for New Era and JT's placement as Director of Sales with the new distributor; (3) while still employed by Living Color, soliciting Living Color's employees, including Leyden; (4) directly or indirectly competing with Living Color; (5) directly or indirectly disclosing Living Color's trade secrets, and/or other valuable confidential and proprietary information to third-parties, including Aqua-Tech; and (6) deriving an improper benefit from the foregoing.

57. As a direct and proximate result of JT's said breaches of fiduciary duty, Living Color has been damaged.

WHEREFORE, Living Color demands judgment against JT for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT VII - BREACH OF FIDUCIARY DUTY (against Leyden)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

11

58. From on or about April 2013 through September 10, 2014, Leyden was employed by Living Color as its East Coast Regional Sales Representative. In that position, Leyden was responsible for the direct management of Living Color's East Coast U.S. sales force, and served as Living Color's agent with Living Color's customers and New Era. By virtue of his position with Living Color, Leyden owed Living Color a fiduciary duty of loyalty, and an overall duty to act in Living Color's best interests.

59. Leyden willfully and knowingly breached his fiduciary duty to Living Color, and consciously disregarded its best interests, by: (1) while still employed by Living Color, coordinating the termination and misappropriation of the Business Relationship; (2) while still employed by Living Color, coordinating the selection of a successor exclusive distributor for New Era and Leyden's placement as Regional Sales Representative with the new distributor; (3) directly or indirectly competing with Living Color; (4) directly or indirectly disclosing Living Color's trade secrets, and/or other valuable confidential and proprietary information to third-parties, including Aqua-Tech; and (5) deriving an improper benefit from the foregoing.

60. As a direct and proximate result of Leyden's said breaches of fiduciary duty, Living Color has been damaged.

WHEREFORE, Living Color demands judgment against Leyden for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT VIII – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (against New Era)

Living Color re-alleges and incorporates paragraphs 1 through 32 and 55 through 60 as though fully set forth herein.

61. New Era knowingly induced and participated in the breaches of fiduciary duties by JT and Leyden.

62. New Era's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

63. Living Color has been directly and substantially injured by reason of New Era's aiding and abetting JT and Leyden in the breaches of fiduciary duties.

64. By reason of New Era's foregoing conduct, New Era is liable to Living Color for damages to be determined at trial.

65. Further, Living Color is entitled to injunctive relief, profits stemming from New Era's aiding and abetting breaches of fiduciary duty, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against New Era for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT IX – AIDING AND ABETTING BREACHES OF FIDUCIARY DUTY
### (against Aqua-Tech)

Living Color re-alleges and incorporates paragraphs 1 through 32 and 55 through 60 as though fully set forth herein.

66. Aqua-Tech knowingly induced and participated in the breaches of fiduciary duties by JT and Leyden.

67. Aqua-Tech's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

68. Living Color has been directly and substantially injured by reason of Aqua-Tech's aiding and abetting JT and Leyden in the breaches of fiduciary duties.

69. By reason of Aqua-Tech's foregoing conduct, Aqua-Tech is liable to Living Color for damages to be determined at trial.

70. Further, Living Color is entitled to injunctive relief, profits stemming from Aqua-Tech's aiding and abetting breaches of fiduciary duty, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against Aqua-Tech for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT X – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (against Aqua-Tech)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

71. Aqua-Tech knew of the Business Relationship and Living Color's employment relationships with JT and Leyden (collectively, the "Employment Relationships").

72. To promote its interests and to damage the business of Living Color, Aqua-Tech intentionally and without justification interfered with the Business Relationship and Employment Relationships by coordinating the termination and misappropriation of same.

73. Aqua-Tech's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

74. By reason of Aqua-Tech's foregoing conduct, Aqua-Tech is liable to Living Color for damages to be determined at trial.

75. Further, Living Color is entitled to injunctive relief, profits stemming from Aqua-Tech's tortious interference with advantageous business relationships, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against Aqua-Tech for damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT XI – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (against New Era)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

76. New Era knew of the Employment Relationships.

77. To promote its interests and to damage the business of Living Color, New Era intentionally and without justification interfered with the Employment Relationships by coordinating the termination and misappropriation of the Employment Relationships.

78. New Era's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

79. By reason of New Era's foregoing conduct, New Era is liable to Living Color for damages to be determined at trial.

80. Further, Living Color is entitled to injunctive relief, profits stemming from New Era's tortious interference with advantageous business relationships, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against New Era for damages, plus interest, costs, and such further relief as this Court deems just and proper.

## COUNT XII – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (against JT)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

81. JT knew of the Business Relationship.

15

82. To promote its interests and to damage the business of Living Color, JT intentionally and without justification interfered with the Business Relationship by coordinating the termination and misappropriation of the Business Relationship.

83. JT's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

84. By reason of JT's foregoing conduct, JT is liable to Living Color for damages to be determined at trial.

85. Further, Living Color is entitled to injunctive relief, profits stemming from JT's tortious interference with advantageous business relationships, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against JT for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT XIII – TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS (against Leyden)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

86. Leyden knew of the Business Relationship.

87. To promote its interests and to damage the business of Living Color, Leyden intentionally and without justification interfered with the Business Relationship by coordinating the termination and misappropriation of the Business Relationship.

88. Leyden's conduct has proximately caused, and will continue to cause, Living Color to suffer substantial damages.

89. By reason of Leyden's foregoing conduct, Leyden is liable to Living Color for damages to be determined at trial.

16

90. Further, Living Color is entitled to injunctive relief, profits stemming from Leyden's tortious interference with advantageous business relationships, actual, compensatory, and any other remedies provided by applicable law.

WHEREFORE, Living Color demands judgment against Leyden for damages, plus interest, costs, and such further relief as this Court deems just and proper.

### COUNT XIV - MISAPPROPRIATION OF TRADE SECRETS
### FLA. STAT. § 688.001, et seq. (against all Defendants)

Living Color re-alleges and incorporates paragraphs 1 through 32 as though fully set forth herein.

91. Living Color owns valuable rights in its trade secrets, to wit, its customer lists, pricing information, sales forecasts, and other confidential and proprietary business information (the "Trade Secrets").

92. Defendants misappropriated Living Color's Trade Secrets and are currently using them in competition with Living Color.

93. The actions of Defendants described above have at all times relevant to this lawsuit been willful and/or knowing.

94. As a direct and proximate result of the actions of Defendants alleged above, Living Color has been damaged and will continue to be damaged by Defendants' actions, and such damage is irreparable.

WHEREFORE, it is respectfully requested that this Court enter a final judgment in favor of Living Color and against Defendants, jointly and severally, enjoining Defendants from any further use of the Trade Secrets under Fla. Stat. § 688.003, for damages, attorneys' fees and costs under Fla. Stat. § 688.004, and for such other, further and different relief the Court may deem just, proper and equitable under the circumstances.

## **DEMAND FOR JURY TRIAL**

Living Color hereby demands a trial by jury on all issues so triable.

Dated: September 26, 2014.

                Respectfully Submitted,

                ROETZEL & ANDRESS, LPA

                /s/Laurence S. Litow
                Laurence S. Litow, Esquire
                Fla. Bar No.: 328758
                lslitow@ralaw.com
                serve.lslitow@ralaw.com
                Vijay G. Brijbasi, Esquire
                Florida Bar No. 15037
                vbrijbasi@ralaw.com
                serve.vbrijbasi@ralaw.com
                350 E. Las Olas Blvd., Suite 1150
                Ft. Lauderdale, FL 33301
                Telephone: 954-462-4150
                Facsimile:  954-462-4260
                ***Attorneys for Plaintiff***